OPINION
{¶ 1} Plaintiff-appellant, Mary Dodson, appeals from a judgment of the Court of Claims of Ohio entered in favor of defendant-appellee, The Ohio State University Medical Center (hereinafter "OSUMC").
 {¶ 2} Plaintiff's claim arises from the personal injury she sustained on January 17, 1999, while she was on the premises of OSUMC. On the date of the incident, plaintiff and her daughter, Robin Milan, were at OSUMC to visit another daughter of plaintiff, Brenda Case. Plaintiff and Milan took an elevator to the fifth floor of Rhodes Hall. Milan exited the elevator before her mother and began to walk down the hall. After plaintiff stepped off the elevator, she slipped on coffee that had been spilled on the floor. Plaintiff fell on her hip, causing it to fracture. Plaintiff did not observe the puddle of coffee prior to her fall.
 {¶ 3} During her deposition, witness Cindy Detty testified that she and her mother, Ruth Detty, observed the aforementioned puddle about ten to fifteen minutes prior to hearing someone scream. Cindy and Ruth Detty did not notify any employee of OSUMC of the puddle on the floor prior to plaintiff's fall. At trial, Milan testified that she saw dried rings around the coffee, which remained on the floor after the incident.
 {¶ 4} At trial, Timothy Trudo, a security officer at OSUMC at the time of the incident, testified that security guards at OSUMC usually go through each building once every four hours. The assistant director of security at the time of the incident, Spero Vasila, testified that the security department "has responsibilities in roving all the medical center buildings. They hit every floor from top to bottom at least two times within a shift." (Tr. 53,) A typical shift in the security department is eight hours. Upon discovering a "spill," it is the practice of the security department of OSUMC to either immediately wipe it up, or contact a dispatcher to have housekeeping clean the spill. Vasila testified that no report was made to a dispatcher regarding the coffee spill prior to plaintiff's fall.
 {¶ 5} On December 21, 2000, plaintiff filed a complaint in the Court of Claims of Ohio, alleging that she sustained personal injury as a direct and proximate result of OSUMC's negligence. At trial, the court held OSUMC not liable for plaintiff's personal injury based on a finding that OSUMC did not breach the standard of care it owed to plaintiff. Specifically, the trial court found that "plaintiff has failed to prove by a preponderance of the evidence that defendant either caused the spill or had actual notice of the spill before the incident." (12/20/02 Decision at 4.) It also found that plaintiff did not prove that the hazard existed "for a sufficient length of time to justify the inference that the failure to warn against it or remove it was attributable to any want of ordinary care." Id. Plaintiff appeals this judgment, asserting the following assignment of error:
THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 6} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280. Furthermore, "`[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" Estate of Barbieri v. Evans (1998), 127 Ohio App.3d 207, 211, citing 5 Ohio Jurisprudence 3d (1978) 192, Appellate Review, Section 603. Thus, in deciding whether a trial court's decision was against the manifest weight of the evidence, an appellate court must give the trial court substantial deference. See C.E. Morris Co., supra. This court concludes that competent, credible evidence exists that supports the trial court's judgment, and for the following reasons, we affirm that decision.
 {¶ 7} In any negligence action, a plaintiff must prove by a preponderance of the evidence that defendant owed plaintiff a duty, that this duty was breached, and that the breach was the proximate cause of plaintiff's injuries. Strother v. Hutchinson (1981), 67 Ohio St.2d 282,285. An owner of a business owes its invitees a duty of ordinary care "in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203. In spite of this duty, a business owner is not an insurer of an invitee's safety. Id. In order for a business invitee to recover in a "slip-and-fall" negligence action against the owner of the premises, the plaintiff must establish the following:
1. That the defendant through its officers or employees was responsible for the hazard complained of; or
2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or
3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.
Johnson v. Wagner Provision Co. (1943), 141 Ohio St. 584, 589.
 {¶ 8} Because the case at hand is a slip-and-fall case and plaintiff was on defendant's premises as a business invitee, this case falls within the ambit of Wagner Provision Co. In this case, no evidence was presented at trial that would indicate OSUMC either created the hazard or had actual knowledge of the hazard. Accordingly, the core issue at trial was whether the coffee was on the floor for a sufficient length of time to justify the inference that the failure to warn against the hazard or remove it was attributable to any want of ordinary care. Essentially, this requires plaintiff to prove that OSUMC breached its duty to her.
 {¶ 9} The frequency of rounds formally performed by OSUMC security is not directly relevant to whether OSUMC was on constructive notice of the hazard. Whether or not this practice is reasonable is not relevant to whether the hazard existed for a sufficient period of time to impute constructive knowledge to OSUMC. In a slip-and-fall case, if a defendant is deemed to possess constructive knowledge of a hazard, the defendant will be found to have breached his duty to a business invitee by failing to warn against it or remove it. See id. Performing formal rounds every four hours may not be reasonable, but that finding, in itself, would not necessarily impute constructive knowledge of a hazard that may have existed for ten to fifteen minutes.
 {¶ 10} At trial, the plaintiff had the burden of proving by a preponderance of the evidence that OSUMC had constructive knowledge of the spill and thereby breached its duty to the invitee by not fixing the hazard or properly warning against it. As presented above, plaintiff introduced evidence as to the length of time the hazard existed. Specifically, the testimonies of Ruth and Cindy Detty indicate that the coffee was on the floor for ten to fifteen minutes. The dried rings observed on the floor indicate that the coffee was on the floor for a sufficient amount of time for at least some of the coffee to evaporate. The trier of fact concluded that plaintiff did not meet her burden with the evidence outlined above. Considering the trial court's reasonable analysis of what inference may be justified by the evidence introduced in this case, it is this court's determination that the trial court's judgment is supported by competent, credible evidence.
 {¶ 11} The trial court's finding that OSUMC did not possess constructive knowledge of the hazard is not against the manifest weight of the evidence. For this court to decide otherwise would essentially require this court to hold that the evidence that the hazard existed for ten to fifteen minutes and evidence of evaporation rings must, as a matter of law, lead to the inference that OSUMC was on constructive notice of a hazard. This court will make no such finding.
 {¶ 12} For the foregoing reasons, plaintiff's single assignment of error is overruled, and the judgment of the Court of Claims of Ohio is affirmed.
Judgment affirmed.
DESHLER and LAZARUS, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.