[Cite as *May v. Kroger Co.*, 2017-Ohio-7696.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| LISA MAY, et al. | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiffs-Appellants | Hon. John W. Wise, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2017 CA 00013 |
| THE KROGER COMPANY | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:          Civil Appeal from the Court of Common
                                                           Pleas, Case No.  15 CV 00547


JUDGMENT:                                      Affirmed


DATE OF JUDGMENT ENTRY:          September 19, 2017


APPEARANCES:

For Plaintiffs-Appellants                    For Defendant-Appellee

JOSEPH A. FRALEY                         MARY BARLEY-MCBRIDE
JOSHUA M. FRALEY                        250 Civic Center Drive
MITCHELL + PENCHEFF, FRALEY,      Suite 280
CATALANO & BODA CO.                   Columbus, Ohio  43215
580 South High Street, Suite 200
Columbus, Ohio  43215

*Wise, John, J.*

**{¶1}** Plaintiffs-Appellants, Lisa May and Jack May, appeal the January 25, 2016, decision of the Licking County Court of Common Pleas granting summary judgment in favor of Appellee The Kroger Company.

STATEMENT OF THE CASE AND FACTS

**{¶2}** On June 30, 2013, Plaintiff-Appellant Lisa May entered the Kroger store #591, located on East Broad Street in Pataskala, Ohio, with her husband Jack and daughter Caitlyn. (Lisa May Depo. at 47). The weather was rainy that day. (*Id.* at 47). Mrs. May turned right upon entering and was making her way toward the deli area when she slipped on a puddle of water and fell to the floor (*Id.* at 60-63). Mrs. May was pushing a shopping cart at the time she slipped on the puddle (*Id.* at p. 68). There were no yellow caution cones near the puddle. *(Id.* at 60). Mrs. May did not see the water puddle until after she fell. (*Id*). Mr. May stated that he was also unable to see the puddle of water, and could only see it when he moved several feet away from the area and had to bend down to be able to see it. *(Id.* at 19).

**{¶3}** Mr. May testified that the puddle of water was a result of water he observed leaking from the tiles in the ceiling. (*Id.* at 66- 67; Jack May Depo. at 20-21). He stated that the puddle of water was somewhere between 15 inches and 24 inches in diameter. (*Id.* at 19; Lisa May Dep. at 68). He further stated that at the time of the incident he observed a drop of water falling every 3-5 seconds. (Jack May Depo. at 20). He further observed discoloration on the ceiling tile from where the water was dripping. (*Id.* at 22-24).

**{¶4}** William O'Connell, a co-manager of Kroger store #591, was called over to the area where Mrs. May fell. (O'Connell Depo. at 29-30). Mr. O'Connell stated that he did not see any water on the floor where Mrs. May fell. (*Id.* at 34:5-21). Mr. O'Connell testified at deposition that there is a history of water-stained tiles on the ceiling of the Kroger store. (*Id.* at 65). He acknowledged that he has to "get them repaired all the time." (*Id.* at 65). He further stated that there are various water spots on the ceiling tiles and that one of the ceiling tiles which was near the produce department appeared to be holding more water than other. (*Id.* at 52-54).

**{¶5}** On June 26, 2015, Appellants Lisa May and Jack May filed a Complaint against Appellee the Kroger Company alleging one count of negligence and one count of loss of consortium.

**{¶6}** On October 24, 2016, Appellee Kroger filed a Motion for Summary Judgment.

**{¶7}** On December 14, 2016, Appellants filed their Memorandum in Opposition to Defendant's Motion for Summary Judgment.

**{¶8}** By Judgment Entry filed January 25, 2017, the trial court granted Appellee's Motion for Summary Judgment.

**{¶9}** Appellants now appeal, assigning the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

**{¶10}** "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE THE KROGER COMPANY REGARDING DEFENDANT'S NEGLIGENCE AS THERE ARE GENUINE ISSUES OF MATERIAL FACT WHICH PRECLUDES SUMMARY JUDGMENT.

{¶11} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE THE KROGER COMPANY ON PLAINTIFF'S LOSS OF CONSORTIUM CLAIM."

## STANDARD OF REVIEW

{¶12} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212, (1987). As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶13} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 1997–Ohio–259, 674 N.E.2d 1164, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264, (1996).

{¶14} It is subject to this standard of review that we address appellants' assignments of error.

**I., II.**

{¶15} Appellants, in their Two Assignments of Error, argue that the trial court erred in granting summary judgment in favor of Appellee. We disagree.

*Negligence Claim*

{¶16} In order to establish actionable negligence, a plaintiff must prove (1) the defendant owed him a duty of care; (2) the defendant breached that duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. *Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707, (1984).

{¶17} The parties agree that Appellant Lisa May was a business invitee of Appellee Kroger. Store owners owe business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, citing *Campbell v. Hughes Provision Co.* (1950), 153 Ohio St. 9. The store's duty includes a duty to provide reasonably safe aisles for its customers. *Dickerson v. Food World* (Dec. 17, 1998), Franklin App. No. 98AP-287, unreported. However, a business owner is not an insurer of a customer's safety or against all types of accidents that may occur on its premises. *Paschal, supra; Johnson v. Wagner Provision Co.* (1943), 141 Ohio St. 584, 589. No presumption or inference of negligence arises from the mere happening of an accident or from the mere fact that an injury occurred. *Dickerson, supra,* citing *Green v. Castronova* (1966), 9 Ohio App.2d 156. *See, also*, *J.C. Penny Co. v. Robison* (1934), 128 Ohio St. 626, paragraph four of the syllabus (concluding the fact that a customer slipped and fell on a floor does not, standing alone, create an inference that the floor was unsafe; there must be testimony tending to show

that some negligent act or omission of the business owner caused the customer to slip and fall).

{¶18} For a business invitee to recover in a "slip-and-fall" negligence action against the owner of the premises, the plaintiff must show:

1. That the defendant through its officers or employees was responsible for the hazard complained of; or

2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or

3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

{¶19} *Johnson v. Wagner Provision Co.* (1943), 141 Ohio St. 584, 589, 49 N.E.2d 925.

{¶20} Here, Appellants do not claim that Appellee created the hazard by placing the water on the floor, or even that it had actual knowledge of the puddle of water. Rather, Appellants assert Appellee Kroger had constructive knowledge that the hazard (leaking water from the ceiling tile) was or could be on the floor and negligently failed to protect Appellant or warn Appellant of its existence.

{¶21} In the case *sub judice*, the trial court stated in its January 25, 2017, Judgment Entry, in relevant part, as follows:

Plaintiffs have come forth with no evidence that defendant's officers or employees placed the water on the floor or that any officer or employee

had actual knowledge of the water. *** Plaintiffs have offered no evidence that a roof leak was the cause of the water dripping from the ceiling or that roof leaks were the cause of any of the previous stained ceiling tiles. There is no evidence in the record that defendant's officers or employees were aware of any roof leaks. Plaintiffs have offered no evidence that any of the previously repaired tiles were in the same area as the ceiling tile that was dripping on the day of the injury or that defendant had any reason to believe water might drip on the floor apart from the fact that it had previously repaired ceiling tiles.

*** 

There was no evidence offered concerning how long the water had been dripping, nor any other evidence that would suggest the water had been on the floor long enough that defendant's officers or employees should have known of its presence. (January 25, 2017, Judgment Entry at 3-4).

{¶22} Here, Appellant stated that she did not see anything on the floor before she fell. *Id.* at 60-61. No debris, kiosks, or advertisements were blocking her view. *Id.* Nothing impaired or impeded her vision of the area. *Id.* The lighting in the store was good. *Id.* at 61. Appellant stated that she does not know how long the water had been dripping from the ceiling tile. *Id.* at 67. Appellant also stated that she had never seen a leak in that area at any other time. *Id.* at 77. She acknowledged that she had no evidence to demonstrate that Kroger knew if there was a roof leak or that there was water on the floor. *Id.* at 69-

70. No one from Kroger, Sedgwick,[1] or anyone else told her that Kroger knew the ceiling had been leaking. *Id.* at 70-71.

**{¶23}** Upon review, we agree with the trial court's determination that Appellants failed to present evidence that Appellee breached a duty to Lisa May. Appellants have not presented evidence that a genuine issue of material fact exists about whether Appellee Kroger had actual or constructive knowledge of the accumulation of water on the floor prior to Appellant's fall. Appellant presented no evidence that anyone from Kroger knew the water was on the floor before she fell, nor did she present any evidence, other than conjecture, of what caused the water to leak from the ceiling onto the floor. *See Cooper v. Red Roof Inns, Inc.* (Mar. 30, 2001), Franklin App. No. 00AP-876, (concluding defendant did not demonstrate defendant's actual knowledge of hazard where there was no evidence that any of defendant's employees knew that clear liquid spots were on the floor before plaintiff slipped and fell); *Kilburn v. Acme-Click* (June 8, 1995), Cuyahoga App. No. 67752, unreported (determining no actual knowledge of hazard demonstrated where no evidence that, before plaintiff slipped on a piece of candle that had fallen from a display onto the floor, anyone saw the candle in the aisle or knew the length of time the candle was in the aisle before the plaintiff fell); *Liebenauer v. Glassman, Inc.* (Jan. 19, 1995), Cuyahoga App. No. 67690, unreported (concluding summary judgment appropriately granted for defendant where plaintiff presented no evidence that store employees had actual or constructive knowledge of a broken jar of salad dressing).

---

[1] Sedgwick is the third party administrator for claims for The Kroger Company.

**{¶24}** We further find that Appellants failed to put forth evidence as to how long the water had been on the floor prior to Appellant Lisa May's slip and fall to support an inference that the failure to warn against it or remove it was attributable to a want of ordinary care. Appellants testimony that the puddle was "up to 24 inches in diameter" and the water dripping from the ceiling was observed to be falling at a rate of one drop every 3-5 seconds, does not provide the court with enough data to extrapolate how long it took the water to accumulate on the floor prior to the fall in question.

**{¶25}** If a plaintiff cannot establish that the owner or its agents created the hazard or possessed actual knowledge of the hazard, evidence showing the length of time during which the hazard existed is necessary to support an inference that the owner had constructive knowledge of the hazard such that the failure to remove or warn of the hazard was a breach of ordinary care. *Presley v. Norwood* (1973), 36 Ohio St.2d 29, 303 N.E.2d 81; *Combs v. First Natl. Supermarkets, Inc.* (1995), 105 Ohio App.3d 27, 30, 663 N.E.2d 669; *Newkirk v. Eavey Quality Foods, Inc.* (Sept. 8, 1997), Butler App. No. CA97-01-013.

**{¶26}** Summary judgment in favor of the defendant has been affirmed in numerous Ohio appellate courts where plaintiffs have failed to demonstrate the length of time a hazard existed prior to their fall. *See Swackhammer v. Kroger Co.*, 10th Dist. Franklin App. No. 03AP-479, 2003-Ohio-6191 (summary judgment was appropriate when there was no evidence that store or janitorial service knew of cooking oil spill prior to shopper's fall or that oil had been on floor long enough to infer constructive knowledge); *Price v. United Dairy Farmers, Inc.*, 10th Dist. Franklin App;. No. 04AP-83, 2004-Ohio-3392 (Business invitee who slipped and fell on liquid substance on store's

floor did not present any evidence as to length of time substance had been on store's floor before he fell); *Peterson v. Giant Eagle, Inc.*, 9th Dist. Summit App. No. 21772, 2004-Ohio-1611 (grocery store patron, who slipped and fell after she stepped on two grapes, failed to present any evidence that grapes were on floor for sufficient period of time for store to become aware of and clean up grapes in its exercise of ordinary care, and thus, grocery store was not liable in negligence for patron's injuries from falling on floor); *Dodson v. Ohio State Univ. Med. Ctr.*, 10th Dist. Franklin App. No. 03AP-54, 2003-Ohio-4410 (hospital did not have constructive knowledge of coffee that had spilled on its floor, for purposes of determining whether hospital breached duty to business invitee who slipped and fell on coffee which had been on floor for 10 to 15 minutes, and dried rings observed on floor indicated that coffee was on floor for a sufficient amount of time for a least some coffee to evaporate); *Tholen v. Wal-Mart*, 12th Dist. Butler App. No. CA2009-03-090, 2010-Ohio-3256 (customer failed to establish store breached any duty in personal injury action arising from customer's slip and fall on french fries while shopping when there was no evidence to establish the length of time the french fries had been on the floor before customer's fall); *Caravella v. W.-WHI Columbus Northwest Partners*, 10th Dist. Franklin App. No. 05AP-499, 2005-Ohio-6762 (evidence was insufficient to establish wet floor in hotel existed for a sufficient amount of time to justify the inference that the failure of owners and operators to warn business invitee was attributable to want of ordinary care; record contained no evidence as to how long the water existed on floor before invitee slipped and fell). *Sulier v. Kroger Co.* (1995), 6th Dist. Lucas No. L-94-179, (we conclude that there is no evidence from which a reasonable jury could determine the length of time the cleaning fluid was on the floor prior to plaintiff's fall. Accordingly, the

theory by which Appellant wishes to establish Kroger's negligence is dependent on an inference upon an inference and is impermissible).

**{¶27}** Appellants further argue that the existence of stained ceiling tiles in other areas of the ceiling constituted evidence that Appellee Kroger knew that the ceiling leaked, and that this alone should put Appellee on notice that it had a problem and impose upon it a higher duty to inspect the premises, especially when it rained. Initially, we do not find that the fact that ceiling tiles show water staining, in and of itself, is direct evidence of a leaky roof. There could be many explanations for such staining to occur. Further, we find that the only evidence presented herein was that the stained tiles and/or repaired tiles were located in other areas of the store, not where Appellant fell. There was no evidence presented that the roof was leaking or that a leaky roof was the source of the water dripping from the ceiling in the area where Appellant Lisa May slipped and fell.

**{¶28}** Based on the foregoing, we find the trial court correctly determined Appellants presented no evidence that Appellee had actual or constructive knowledge of the water on the floor.

### Consortium Claim

**{¶29}** We now turn to Appellants' argument the trial court erred in granting summary judgment in favor of Appellee on Appellant Jack May's loss of consortium claim. "[A] claim for loss of consortium is derivative in that the claim is dependent upon the defendants having committed a legally cognizable tort upon the spouse who suffers bodily injury." *Donnelly v. Herron,* Cuyahoga App. No. 74324, 1999 WL 35345, at *7 (Jan. 21, 1999) citing *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 585 N.E.2d 384.

Because Appellee is not liable to Appellant Lisa May for her injuries, there is no legally cognizable tort against Appellee; therefore, Appellant Jack May has no derivative claim to loss of consortium.

{¶30}  Appellants' Two Assignments of Error are overruled.

{¶31}  For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.

By: Wise, John, J.

Gwin, P. J., concurs.

Wise, Earle, J., dissents.

_____
HON. JOHN W. WISE

_____
HON. W. SCOTT GWIN

_____
HON. EARLE E. WISE, JR.

JWW/d 0807

*Wise, Earle, J., dissents.*

**{¶32}** I respectfully dissent from the majority's opinion.

**{¶33}** The majority finds at ¶ 23 that "Appellants have not presented evidence that a genuine issue of material fact exists about whether Appellee Kroger had actual or constructive knowledge of the accumulation of water on the floor prior to Appellant's fall." I disagree.

**{¶34}** Once the burden shifted to Appellants to set forth specific facts showing there was a genuine issue of material fact for trial, Appellants presented evidence via their depositions and that of Mr. O'Connell. Mrs. May testified she slipped and fell on a puddle of water on the floor that came from the ceiling because she could see it dripping. Lisa May Depo. at 66. A lot of ceiling tiles had water marks on them. *Id.* at 69. The weather was rainy that day. *Id.* at 47. Mr. May confirmed it was raining that day, and testified the water was a puddle between 15 and 24 inches in diameter and when he looked up, he observed a drop of water falling every 3-5 seconds from a discolored ceiling tile. Jack May Depo. at 15, 20. Mr. O'Connell did not see any water on the floor. O'Connell Depo. at 34. He acknowledged he needed to repair water-stained ceiling tiles in the store all the time. *Id.* at 64-65. Appellants presented a work order of Phinney Industrial Roofing, Inc., dated three days after the incident, indicating a leak had occurred and "another ceiling tile looks to be holding water (much worse than the others) in front of the produce department." *Id.* at 53-56. The work order noted "[m]oved ballast to find and repair 1 hole in between rtu 3 and 5" and "[h]ole in field membrane. Repaired with a compatible quickseam patch."

{¶35} Contrary to what the trial court found, based on the evidence presented during the summary judgment phase, reasonable inferences could be made that a leak caused the water dripping from the ceiling and leaks were commonplace since water-stained ceiling tiles needed repaired all the time.

{¶36} The trial court also determined there was no evidence that would suggest the water had been on the floor long enough for Appellee to have known of its existence. The majority at ¶ 24 finds Mr. May's testimony regarding the size of the puddle in relation to the drops falling every 3 to 5 seconds "does not provide the court with enough data to extrapolate how long it took the water to accumulate on the floor prior to the fall in question." I find this is an issue to be proven at trial and to be determined by a factfinder. *See Youngerman v. Meijer, Inc.* 2d Dist. Montgomery No. 15732, 1996 WL 531628 (Sept. 20, 1996).

{¶37} I believe Appellants' evidence of Mr. O'Connell's admission of numerous repairs for water-stained ceiling tiles, coupled with the observation of dripping water from the ceiling, was sufficient to meet their reciprocal burden pursuant to *Dresher, supra.* I find the issues of constructive notice and whether the danger existed for a sufficient length of time are genuine issues of material fact. *See Jordan v. Simon Property Group,* 11th Dist. Lake No. 2004-L-060, 2005-Ohio-4480.

{¶38} In construing the evidence in a light most favorable to the nonmoving party, I would find reasonable minds could reach different conclusions as to whether Appellee had constructive notice of the hazard. Therefore, I would reverse the trial court's granting of summary judgment to Appellee on Appellants' claims.